**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

Hazel Ocampo (SBN 281624)
Henry Stroud (SBN 342479)
GREENBERG TRAURIG, LLP
400 Capitol Mall, Suite 2400
Sacramento, CA 95814
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
Hazel.Ocampo@gtlaw.com
Henry.Stroud@gtlaw.com
Attorneys for Defendant
MATHESON TRI-GAS, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON JOHNSON, | Civil Case No.: 3:23-CV-05375-RFL |
| Plaintiff, | [PROPOSED] CONSENT DECREE |
| vs. | |
| MATHESON TRI-GAS, INC., | (Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*) |
| Defendant. | |

# CONSENT DECREE

The following Consent Decree is entered into by and between Jason Johnson ("Plaintiff") and Matheson Tri-Gas, Inc., a California Corporation ("MTG" or the "Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" or "Party" and collectively the "Settling Parties" or "Parties".

**WHEREAS,** Plaintiff is a citizen of the State of California.

**WHEREAS,** Plaintiff alleges he is concerned with the environmental health of the San Francisco Bay, its inflows and outflows, and the overall San Francisco Bay Watershed, of which the San Francisco Bay is a part, and uses and enjoys the waters of the San Francisco Bay, its inflows and outflows, and other waters of the San Francisco Bay Watershed;

**WHEREAS,** MTG is the operator of a facility that is engaged in the production of industrial gases, and is located at 6775 Central Ave., Newark, CA 94560, hereinafter referred to by the Settling Parties as the "Facility;"

**WHEREAS,** Plaintiff alleges that his use and enjoyment of these waters are negatively affected by the pollution allegedly caused by the operations at the Facility;

**WHEREAS,** Plaintiff alleges he acts in the interest of the general public to prevent pollution in these waterways, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes;

**WHEREAS,** discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit" or "Previous Industrial Stormwater Permit"), and as amended by Order No. 2014-0057-DWQ as amended by Order No. 2015-0122-DWQ ("IGP"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS,** the Facility is listed as operating under SIC Code 2813 relating to industrial gases. Defendant obtained coverage for the Facility in 1992 under the California Industrial General Permit, under the issued WDID No. 2 01I003536. Defendant thereafter renewed the coverage for the Facility in 2015 under the same WDID No. The 2015 "Notice of Intent" for the Facility to comply with the terms

of the Industrial Stormwater Permit lists "Matheson" and "Matheson Tri Gas Newark" as the Operator and Facility names, respectively;

**WHEREAS**, on July 17, 2023, Plaintiff sent Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Regional Water Quality Control Board – San Francisco Bay Region ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and violations of the 1997 Storm Water Permit and the IGP at the MTG Facility[1];

**WHEREAS**, on, October 20, 2023, Plaintiff filed a complaint against MTG in the United States District Court, Northern District of California (Case No. 3:23-cv-05375-RFL), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the 1997 Storm Water Permit and the IGP at the MTG Facility ("Complaint");

**WHEREAS**, on or about on February 28, 2024, representatives of the Parties (including Plaintiff's expert environmental consultant) conducted an inspection of the Facility;

**WHEREAS**, Plaintiff alleges MTG to be in violation of the substantive and procedural requirements of the 1997 Storm Water Permit, the IGP and the Clean Water Act with respect to the MTG Facility;

**WHEREAS**, MTG s denies all allegations in the Notice Letter and Complaint relating to the MTG Facility, and maintains it is and has been in compliance with the 1997 Storm Water Permit, the IGP and the Clean Water Act with respect to the MTG Facility;

**WHEREAS**, notwithstanding the fact that MTG disputes the validity of the allegations made by Plaintiff, MTG has agreed to undertake certain revisions as described below in response to the allegations contained in Plaintiff's Notice Letter and Complaint;

**WHEREAS**, nothing herein shall be construed as an admission by MTG as to any fact, finding, conclusion, violation of law or otherwise;

---

[1] For purposes of this Consent Decree, the Industrial General Permit and any amendments thereto in effect at the time of MTG's required compliance with the terms of this Consent Decree shall be referred to as "the Industrial General Permit" or "IGP."

**WHEREAS**, Plaintiff and MTG have agreed that to avoid costly litigation it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and Complaint without further proceedings; and

**WHEREAS**, all actions taken by MTG pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2. Venue is appropriate in the Northern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the MTG Facility is located within this District;

3. The Complaint alleges claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4. Plaintiff has standing to bring this action; and

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the term of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree that is brought during the term of this Consent Decree.

## I. OBJECTIVES

It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by Plaintiff in his Notice Letter and Complaint. Specifically, MTG agrees to comply with Receiving Water Limitation VI.A. in the IGP which requires that MTG "shall ensure that industrial storm water discharges ... do not cause or contribute to an exceedance of any applicable water quality standards in any affected receiving water,"; Effluent Limitation V.A. of the IGP which requires that MTG "shall implement BMPs [Best Management Practices] that comply with the BAT/BCT requirements of ...[the IGP] to reduce or prevent discharges of pollutants in ... [MTG's] storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and

achievability"; and the Monitoring, Sampling, and Analysis Requirements found in § XI of the IGP. MTG shall maintain BMP compliance with BAT/BCT standards and with the applicable water quality standards as those terms are defined by the IGP. Nothing herein shall be interpreted as an admission by MTG that it has previously failed to comply with these or any other requirements of the CWA or the IGP.

## II. AGENCY REVIEW AND TERM OF CONSENT DECREE

**A.** **Agency Review and Comment.** Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the later of: (i) the final signature of the Settling Parties, or (ii) the receipt by the Parties of any required additional documentation, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt of the Consent Decree by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to MTG. Upon jointly executing the Consent Decree and/or upon submitting the Consent Decree for agency review, the Parties shall file a joint notice to the Northern District of California notifying the Court of the settlement, informing the Court of the agency review period, and asking the Court to stay all deadlines (including but not limited to the deadline for MTG to file responsive pleadings), until thirty (30) days after completion of the agency review period. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time, and provided that the Settling Parties are negotiating in good faith, to jointly ask the Northern District of California to extend the stay of any proceedings in this action pending efforts to resolve the issue(s) raised by the Federal Agencies.

**B.** **Effective Date.** The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree and all Parties have received a copy.

**C.** **Termination Date.** This Consent Decree shall terminate two (2) years after the Effective Date ("Termination Date"), or at such time as MTG ceases to have stormwater discharges at the MTG Facility subject to the IGP and MTG: 1) files all necessary and appropriate submissions regarding the same to the State Board and/or the Regional Board; and 2) provides notice of such filing to Plaintiff. Notwithstanding the foregoing, if there is a prior ongoing, unresolved dispute regarding MTG's compliance with this

Consent Decree, the Consent Decree shall only terminate upon resolution of that dispute consistent with the terms herein.

### III. POLLUTION CONTROL REQUIREMENTS

**A. Best Management Practices ("BMPs") Revisions.** MTG shall cause the following additional BMP changes at the Facility to be carried out in the specified location starting within one hundred twenty (120) days of the Effective Date through the Termination Date, as follows:

1. Increase frequency of vacuum sweeping at the site to monthly, rather than once each year prior to the wet season;

2. Install debris screens and custom drop inlet filters with particulate filtration and carbon/zeolite media at the storm drain inlets as shown in Attachment 1;

3. If NAL Exceedances[2] in violation of the IGP occur at the Facility within the reporting year after the implementation of other BMP revisions contained herein, MTG shall assess the installation of a treatment system designed to meet the design storm standards as described in Section X.H.6. of the IGP;

**B. SWPPP and Monitoring Implementation Program ("MIP") Revisions/Amendments:** MTG shall carry out the following actions regarding the Facility's requisite Storm Water Pollution Prevention Plan (the "SWPPP") and/or the MIP starting within one hundred twenty (120) days of the Effective Date through the Termination Date, as follows in the manner as specified below:

1. Include the area along the south side of the property where run-on from the neighboring business occurs in the description of drainage areas;

2. Update the pollutant source assessment to identify any dust and particulate generating activities, along with the potential pollutants associated with those activities;

3. Update the pollutant source assessment to include a narrative assessment of pollutants likely to be present in industrial storm water discharges, particularly with respect to the Facility's

---

[2] Exceedances of the NALs that are attributable solely to pollutants originating from non-industrial pollutant sources (such as run-on from adjacent facilities, non-industrial portions of the Discharger's property, or aerial deposition) are not a violation of the IGP. The determination of whether an NAL violation is attributable solely to pollutants originating from non-industrial pollutant sources shall be made by review of the experts for both Parties based on evidence showing the same.

monitoring parameters (pH, TSS, O&G, Al, Fe, Zn, N+N) and their likely industrial sources at the facility;

**4.** Update the pollutant source assessment to include a narrative assessment of the direct and indirect pathways by which pollutants may be exposed to storm water;

**5.** Update the MIP to clearly define the conditions for when to open the bladder gate valve to discharge contained storm water;

**6.** Update the MIP to clearly define how the facility will manage the bladder gate valve when there is potential for significant rainfall during off-hours or weekends, when the Facility is not operating, to avoid flooding the property;

**7.** Update the MIP to clearly define the conditions when samples of the discharge of contained storm water will be taken, in compliance with the requirements of the IGP; and

**8.** Update the site map to remove indication of run-on from the neighboring property to the north.

C. **Numeric Action Levels ("NALs") for Discharges from the MTG Facility.**

**1.** The following Numeric Action Levels ("NALs") in the IGP are applicable to the Facility based on the general parameters required to be sampled pursuant to the IGP, its SIC code(s) and/or pollutant source assessment: (i) pH; (ii) Oil and Grease; (iii) Total Suspended Solids; (iv) Iron; (v) Aluminum; (vi) Zinc; and (vii) Nitrate + Nitrite Nitrogen (N+N).

**2.** MTG will continue to act in conformity with the IGP and the SWPPP for the Facility, as may be amended from time to time.

**3. Exceedance Response Actions (ERAs)**

    **a.** MTG is required to comply with the Exceedance Response Action requirements of the IGP as stated in IGP § XII.

D. **Sampling and Analysis**

**1.** During the term of this Consent Decree, and as set forth in the IGP, MTG shall collect samples of Qualifying Storm Events ("QSE"), as defined in the IGP, from at least two QSEs during the first half of the reporting year (July 1 – December 31) and from at least two QSEs during the second half of the reporting year (January 1 – June 30) as set forth by IGP requirements. However, nothing herein

shall require MTG to conduct sampling when a QSE, as defined by the IGP, does not occur. Furthermore, nothing herein shall require MTG to conduct sampling when no discharge resulting from a QSE occurs, for example, due to the implementation of BMPs that prevent storm water discharge.

    **2.** MTG shall comply with the analytical test methods as required by Section XI.B of the IGP as more fully described in the Monitoring Implementation Plan that is included in its SWPPP. All reported analyses required by the Consent Decree shall be reported within thirty days of the laboratory receipt of the sample or as promptly as possible upon receipt if the laboratory takes more than thirty (30) days to report the analyses.

    **3.** During the term of the Consent Decree, MTG will give notice to Plaintiff of the filing of any reports or other documents containing the complete laboratory results of samples collected as required by this Consent Decree within thirty (30) days of certifying in SMARTS.

**E. Visual Observations.** During the term of this Consent Decree, MTG shall conduct and document visual observations pursuant to Section XI.A of the IGP.

**F. Annual Report.** During the term of this Consent Decree, MTG shall give notice, pursuant to Paragraph VIII(E) hereof, to Plaintiff within thirty (30) days of when MTG submits an Annual Report to the State Board due to be submitted to the State Board no later than July 15 of each year during the term of this Consent Decree. The Annual Report shall contain all information required by the IGP.

## IV. MONITORING AND REPORTING

**A. Site Inspections.**

    **1.** Plaintiff may conduct a site inspection of the Facility one (1) time during the term of this Consent Decree, to confirm compliance with the terms of the Consent Decree. This inspection may occur during the Effective Date, up to forty-five (45) days prior to the Termination Date. Up to three (3) of Plaintiff's representatives may attend the site inspection. The site inspection shall occur Monday through Friday, excluding State and Federal and religious holidays, and shall be scheduled for a time between 9:00 a.m. and 3:00 p.m. Plaintiff shall notify MTG in writing of its request for an inspection at least two (2) weeks in advance of the proposed inspection date. Plaintiff and MTG shall work in good faith to select a mutually agreeable date and time for the inspection, and shall enter an access agreement prior to

such inspection. MTG's personnel, consultants, contractors, and/or attorneys may accompany Plaintiff's representative(s) throughout the inspection.

2. Plaintiff shall provide MTG with any comments regarding the Site Inspection within seventy-two (72) hours of the completion thereof. MTG shall respond to Plaintiff's comments within thirty (30) days of the date on which they are received; however, MTG is not obligated to respond to any comments regarding the Site Inspection if such comments are received after seventy-two (72) hours has passed.

**B. Compliance Monitoring and Oversight.** MTG shall make a one-time payment of seven thousand five hundred dollars ($7,500.00) to compensate Plaintiff's Counsel for costs and fees to be incurred for monitoring MTG's compliance with this Consent Decree. Payment shall be made payable by check to "Brodsky Smith" via U.S. Mail within thirty (30) days of the Effective Date.

**C. MTG Document Provision.** During the term of this Consent Decree, within thirty (30) business days of Plaintiff's written request, MTG shall give notice to Plaintiff of all documents regarding compliance with the IGP and/or this Consent Decree at the MTG Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality. Any correspondence related to MTG's compliance with the IGP and/or this Consent Decree received by MTG from any regulatory agency, state or local agency, county, or municipality shall be provided to Plaintiff within thirty (30) days of receipt by MTG. Provided, however, that this Consent Decree shall not require MTG to disclose any information or documents subject to the Attorney Client Privilege, the Attorney Work Product, or any other applicable confidentiality and/or trade secret doctrine.

**V. ENVIRONMENTAL PROJECT & REIMBURSEMENT OF LITIGATION FEES & COSTS**

**A. Environmental Project.** To remediate the alleged environmental harms resulting from alleged non-compliance with the 1997 Storm Water Permit and IGP alleged in the Complaint, MTG agrees to make a payment of five thousand dollars ($5,000.00) to the Peninsula Open Space Trust and mailed to 222 High Street, Palo Alto, CA 94301. The payment shall be made within thirty (30) days of the Effective Date.

B.     **Reimbursement of Attorneys' Fees and Costs.** MTG shall pay a total of forty-six thousand dollars ($46,000.00) to "Brodsky Smith" for investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred by Plaintiff as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made payable to "Brodsky & Smith" by check delivered via U.S. Mail. The payment shall be made within thirty (30) days of the Effective Date. Plaintiff shall provide MTG with a W-9 form in advance of the payment deadline.

## VI. DISPUTE RESOLUTION AND RETENTION OF JURISDICTION

A.     **Continuing Jurisdiction.** This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, unless a Party files a timely motion and is granted an extension of time from the Court to retain jurisdiction. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

B.     **Meet and Confer.** A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying the other Party in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of thirty (30) days from the date of the notice. The Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

C.     **Dispute Resolution.** If the Parties cannot resolve a dispute by the end of the meet and confer informal negotiations, then the Parties shall attempt to settle the dispute through mediation provided by the American Arbitration Association ("AAA") pursuant to AAA's Commercial Mediation Provisions in effect at the time of the act or acts being disputed occurred. **Burden of Proof.** In any dispute resolution proceeding, the Party invoking the dispute resolution procedures provided herein shall have the burden of demonstrating that the other Party has failed to meet its obligations as set forth herein.

D.     **Enforcement Fees and Costs.** If formal dispute resolution is not successful, then the Parties may file a motion to enforce settlement with the Court. Reasonable litigation costs and fees incurred in prosecuting a motion to enforce such shall be awarded to the prevailing Party.

## VII. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

A. **Plaintiff's Public Release of Claims.** This Consent Decree is a final and binding resolution between Plaintiff, on his own behalf, and on behalf of the public and in the public interest, and MTG, and its parents, subsidiaries, owners, shareholders, , affiliated entities, directors, managers, members, divisions, subdivisions, affiliates, insurers, landlords, lenders, successors or assigns, and any of their respective officers, agents, employees, attorneys, assigns and other representatives, if any (collectively "Releasees"), and shall have a preclusive effect such that no other person or entity, whether purporting to act in his, her, or its interests or the public interest shall be permitted to pursue and/or take any action with respect to any alleged violation of the CWA, 1997 Storm Water Permit, and/or IGP that was alleged in the Complaint, Notice Letter, or that could have been brought pursuant to the IGP, Notice Letter or Complaint. Nothing in this Consent Decree waives the rights of the United States to enforce its rights under Federal Law.

B. **Plaintiff's Release of Additional Claims.** As to Plaintiff for and in his individual capacity only, this Consent Judgment shall have preclusive effect such that he shall not be permitted to pursue and/or take any action with respect to any other statutory or common law claim, to the fullest extent that any of the foregoing were or could have been asserted by him against MTG or the Releasees based on the facts alleged in the Complaint, IGP and/or the Notice Letter, whether or not based on actions committed by MTG.

C. **Waiver of Rights Under Section 1542 of the California Civil Code**

1. Plaintiff acting in his individual capacity waives all rights to institute any form of legal action, and releases all claims against MTG, and the Releasees, (referred to collectively in this Section as the "Claims"). In furtherance of the foregoing, Plaintiff waives any and all rights and benefits which he now has, or in the future may have, conferred upon him with respect to the Claims by virtue of the provisions of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF

KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

2. Plaintiff understands and acknowledges that the significance and consequence of this waiver of California Civil Code § 1542 is that even if Plaintiff suffers future damages arising out of or resulting from, or related directly or indirectly to, in whole or in part, the facts in the Complaint or Notice Letter, Plaintiff will not be able to make any claim for those damages against MTG or the Releasees.

D. **MTG's Release of Plaintiff.** MTG, on behalf of itself, its past and current agents, representatives, attorneys, successors and/or assignees, hereby waives any and all claims against Plaintiff, his attorneys, and other representatives for any and all actions taken or statements made by Plaintiff and his attorney and other representatives, prior to the Effective Date, whether in the course of investigating and/or pursuing the Claims.

E. **Parties' Release.** Unless specifically provided for in this Consent Decree, the Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates and divisions and subdivisions and members and owners, and their respective current and former officers, directors, owners, managers, members, employees, shareholders, insurers, landlords, lenders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) release each other from any additional claims and attorneys' fees or expenses, and expert fees/costs related to the resolution of this matter.

F. Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to MTG's compliance with the IGP or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

VIII. **MISCELLANEOUS PROVISIONS**

A. **No Admission of Liability.** Neither this Consent Decree, the implementation of additional or modified BMPs, the revision and implementation thereof of the SWPPP, nor any payment pursuant to

the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. MTG maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

**B.     Force Majeure.** MTG will notify Plaintiff if timely implementation of its duties under this Consent Decree becomes impossible due to circumstances beyond the control of MTG or its agents and which could not have been reasonably foreseen and prevented by MTG's exercise of due diligence. Any delays due to MTG's failure to exercise diligent efforts to comply with the terms of this Consent Decree will not, in any event, be considered to be circumstances beyond MTG's control.

**C.     Construction.** The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the IGP, the Clean Water Act, or specifically herein.

**D.     Choice of Law and Venue.** The laws of the United States shall govern this Consent Decree, with venue proper only in the Central District of California.

**E.     Severability.** In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**F.     Correspondence and Notices.** Any and all notices and/or correspondence between the Parties provided for or permitted under this Consent Decree shall be in writing and personally delivered or sent by:

    **1.**     First-class (registered or certified) mail return receipt requested;

    **2.**     Overnight or two-day courier; or

    **3.**     By email on any Party by the other Party to the following addresses:

**If to Plaintiff:**

Evan J. Smith
Ryan P. Cardona
BRODSKY SMITH
333 E. City Ave., Suite 805
Bala Cynwyd, PA 19004
Tel:  (610) 667-6200
Fax:  (610) 667-9029
Email: esmith@brodskysmith.com
       rcardona@brodskysmith.com

**If to MTG:**

Stephen Stroud
Executive Vice President
General Counsel
Matheson Tri-Gas, Inc.
3 Mountainview Road, 3rd Floor
Warren, NJ 07059
Telephone: 908-991-9333
sstroud@mathesongas.com

With a Copy to:
James Murphree
Director Environmental Compliance
MATHESON
1700 Scepter Road
Waverly, TN 37185
Office: 931-296-8151
jmurphree@mathesongas.com

Any change of address or addresses shall be communicated in the manner described above for giving notices.

**G.  Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**H.  Modification of the Consent Decree.** Except as otherwise provided herein, this Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties, or upon motion of any Party as provided by law and upon an

entry of a modified Consent Judgment by the Court. If any Party wishes to modify any provision of this Consent Decree, such Party must notify the other Party in writing at least thirty (30) days prior to taking any step to implement the proposed change.

**I.     Full Settlement.** This Consent Decree contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all discussions, negotiations, commitments and understandings related thereto. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto. No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

**J.     Integration Clause.** This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the Consent Decree between the Settling Parties and expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and/or warranties (express or implied) concerning the subject matter of this Consent Decree.

**K.     Authority of Counsel.** The undersigned representatives for Plaintiff and MTG each certify that they are fully authorized by the party whom they represent to approve this Consent Decree as to form.

**L.     Authority.** MTG certifies that its undersigned representative is fully authorized to enter into this Consent Decree, to execute it on behalf of MTG, and to legally bind MTG to its terms.

**M.     Agreement to be Bound.** The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

## IX. COURT APPROVAL

The Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or trial on the allegations of the Complaint and Notice Letter which are at issue in this action. If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date set forth below.

**SO AGREED AND APPROVED AS TO CONTENT**

Dated: 02/14/2025     **PLAINTIFF JASON JOHNSON**

_Jason Johnson_
Jason Johnson

Dated: 02/18/25     **DEFENDANT MATHESON TRI-GAS, INC.**

By: _[signature]_
Name: Stephen I. Stroud
Title: Secretary

**APPROVED AS TO FORM**

Dated: 02/17/2025     **BRODSKY SMITH**

By: _Ryan P. Cardona_
Evan J. Smith (SBN: 242352)
Ryan P. Cardona (SBN: 302113)

*Attorneys for Plaintiff*

Dated: 02/17/2025     **GREENBERG TRAURIG, LLP**

By: _[signature]_
Hazel Ocampo (SBN 281624)
Henry Stroud (SBN 342479)

*Attorneys for Defendant*

**IT IS SO ORDERED.**

Date: April 14, 2025

_[signature]_
The Honorable Rita F. Lin
United States District Court Judge